UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 3:19-cv-01303-GCS |
| | ) |
| MATTHEW JOHNSON, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

This matter is before the Court on Defendants' motions for summary judgment as to exhaustion of administrative remedies. Plaintiff opposes the motions. The Court held an evidentiary hearing on the motions on November 6, 2020 and took the matter under advisement. Based on the reasons delineated below, the Court grants the motions for summary judgment.

FACTUAL BACKGROUND

Plaintiff Joshua Lee Hoskins, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights arising from an alleged excessive use of force incident on September 4, 2019. He requests monetary and injunctive relief. (Doc. 1). Plaintiff alleges that on September 4, 2019, he was punched in the face by Lt. Johnson through the chuckhole of his cell. (Doc. 1, p. 43). This was apparently done at the request of Vandekerhove, Hale,

Frank, Mumbower, Swisher, Grove, Wall, Baker, Dudek, and Bailey. *Id.* at p. 43, 47-48, 62, 66-67. In the case of Frank, Mumbower, Swisher, Grove, Wall, Baker, Dudek, and Bailey, this was in retaliation for Plaintiff filing grievances. *Id.* at p. 45, 47-48, 62, 66-67. Heck, Kulich, Adams, Meracle and Cooley were all aware that Lt. Johnson was going to assault Plaintiff before it happened, but took no action. *Id.* at p. 50-51, 64-66.

As a result of being punched, Plaintiff experienced bleeding in his gums, burning, redness, swelling, and bruising. (Doc. 1, p. 46). After he was assaulted, Nurse K. Hess spoke with Plaintiff and informed him she would not take him to the Health Care Unit ("HCU") because he had previously filed a grievance against her. *Id.* Mumbower, Swisher, Grove, Love, Harriss, and Wall also spoke with Plaintiff and saw him spitting up blood, but refused to take him to get medical care. *Id.* at p. 47. Adams and Cooley stated that they told their staff not to take Plaintiff to the HCU. *Id.* at p. 64, 66. Bell and Justice later saw Plaintiff in pain, but refused to take his sick call slips. *Id.* at p. 67. Mumbower told Plaintiff he was blocking Plaintiff's sick call slips and that he would not get any grievance forms. *Id.* at p. 58. Baker and Dudek also told Plaintiff they were blocking his sick call slips. *Id.* at p. 59, 67. Lively informed Plaintiff that he and the security staff would ensure he did not keep any pain medication or other means to treat his injuries. *Id.* at p. 60. Frank later interviewed Plaintiff for an investigation into the September 4, 2019 incident and attempted to get him to deny the assault, under threat of being placed in segregation for a significant amount of time. *Id.* at p. 52.

Plaintiff saw Dr. Myers on September 27, 2019. (Doc. 1, p. 48). He requested pain relievers and "other medical necessities" and Dr. Myers refused, telling Plaintiff that he

would have to purchase them. *Id*. Plaintiff informed Dr. Myers he was indigent, but Dr. Myers was unmoved. *Id.* at p. 49. Dr. Myers refused Plaintiff pain medication on at least three other occasions and told him he would not refer him to an outside specialist because Plaintiff kept telling him what to do. Plaintiff saw Nurse Practitioner Blum on November 13, 2019. *Id.* at p. 68. Blum refused to override Dr. Myers's decision not to give Plaintiff pain medication. *Id.* at p. 69.  Plaintiff was prescribed a mouthguard by the prison dentist after the assault, and Hess made him throw it away, telling security staff to confiscate any mouthguards they found. *Id.* at p. 48. On October 22, 2019, Plaintiff received a replacement, which Vandekerhove confiscated. *Id.* at p. 62. Heck, Cooley, and Adams were aware of the confiscation but did nothing. *Id.* at p. 63, 66. Swisher threatened Plaintiff unless he refused his psychotropic medications, and Frank was aware Plaintiff was not receiving these medications. *Id.* at p. 47, 52-53. Baker later forced Plaintiff to sign a refusal of his psychotropic medications. *Id.* at p. 61.

On November 15, 2019, Plaintiff spoke with Warden Thompson. (Doc. 1, p. 69). Thompson acknowledged receiving Plaintiff's "kites" (direct letters) prior to September 4, 2019 wherein Plaintiff complained that staff told him they would have Johnson assault him. Thompson also acknowledged later kites wherein Plaintiff complained he was not receiving medical treatment and with the staff doing nothing about it due to Plaintiff filing grievances. *Id.* at p. 69.[1]

---

[1] The Court dismissed without prejudice Defendants Dudek, Bailey, Meracle, Cooley, Thompson, Bell, Justice and Blum.  (Doc. 13).

The Court conducted a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 13). The March 23, 2020 Order allowed Plaintiff to proceed on the following claims: (1) that Defendant Johnson used excessive force; (2) that Defendants Vandekerhove, Hale, Frank, Mumbower, Swisher, Groves, Wall, Baker, Heck, Kulich, and Adams failed to intervene or protect Plaintiff; (3) that Defendants K. Hess, Vandekerhove, Heck, Frank, Adams, Mumbower, Swisher, Grove, Love, Harriss, Adams, Lively, Baker, Wall, and Myers were deliberately indifferent to Plaintiff's serious medical condition; and (4) that Defendants Johnson, Frank, Mumbower, Swisher, Grove, Wall, Baker, and Love retaliated against Plaintiff. In response to the allegations contained in the complaint, Defendants filed summary judgment motions regarding the exhaustion of administrative remedies.

The record reflects that Hoskins has submitted many grievances throughout his incarceration, and Defendants have appended many of these to their motions.[2] A majority of these grievances are unrelated to the matter at hand and will not be addressed. The parties appear to agree that grievance # 3084-09-19 is relevant to the alleged conduct in this case.[3] This grievance is dated September 16, 2019, and Hoskins alleges that Lt.

---

[2]   On September 13, 2019, a grievance counselor responded to Hoskins informing him that he had filed over 50 grievances since coming to Pinckneyville on June 5, 2019, and that all grievances had been logged and that responses would be forthcoming to all of them.

[3]   The record reflects that the Administrative Review Board ("ARB") reviewed thirty-seven (37) grievances submitted by Hoskins from September 4, 2019 through November 26, 2019 (time from the alleged incident to the filing of the complaint). Of the 37 grievances, sixteen were submitted for review following the proper protocols of Department Rule 504, and the remaining grievances were returned for non-compliance with Department Rule 504. Of the properly submitted grievances, 7 grievances are dated prior to the September 4, 2019 alleged incident and 9 of the grievances were unrelated to the claims in this case; in fact, eight of them referenced issues arising from Hoskins's incarceration at Stateville Correctional Center. The ARB returned the remaining grievances for failure to follow Department Rule 504 – namely

Johnson punched him in the face on September 4, 2019 and that he did not receive medical care to address his injuries. Hoskins names Lt. Johnson and C/O Harriss. This grievance was forwarded to Internal Affairs to investigate the allegations regarding staff assault. On October 1, 2020, the warden denied and returned this grievance.

The Court held an evidentiary hearing on November 6, 2020 and took the matter under advisement. (Doc. 91). The Court heard testimony from Plaintiff and Charlene Hale, a grievance counselor.

Hoskins testified that he was aware of the grievance process at Pinckneyville. Hoskins maintains that some of his grievances were destroyed and that others were not destroyed. Hoskins testified that he does not have copies of any of these grievances that he contends were destroyed by Defendants. Hoskins admitted that grievance # 3084-09-19 was not destroyed. During the hearing, Hoskins admitted that he did not file a grievance as to Dr. Myers regarding the alleged incident in this case.

Ms. Hale testified that Hoskins filed grievance # 3084-09-19 on September 17, 2019. Ms. Hale further indicated that the grievance was forwarded to Internal Affairs for investigation, due to the grievance alleging serious staff misconduct. Ms. Hale indicated that the grievance was ultimately signed off by the Chief Administrative Officer ("CAO") and returned to Hoskins in early October of 2020. Ms. Hale testified that the typed list of

---

Hoskins failed to include the counselor's response and/or the grievance officer and Chief Administrative Officer's response indicating that grievances had not been reviewed at the first and second level prior to being submitted to the ARB. Further, the Pinckneyville Grievance Log reveals that Hoskins submitted nine (9) grievances for review at Pinckneyville from September 4, 2019 and November 26, 2019. Only two of those grievances were reviewed by the grievance officer and signed by the Chief Administrative Officer. The remaining grievances were only reviewed by the counselor at the first level and not submitted to the grievance officer for a second level review.

grievances and responses, which was submitted by Hoskins in his Supplemental Response, was a list she drafted and provided to Hoskins as a courtesy in response to a request made by Hoskins for the status of the grievances he had submitted. She testified that the response associated with grievance # 3084-09-19, that indicated "denied and returned" was a mistake and that, at the time she provided that list, grievance # 3084-09-19 was still pending review.

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to

exhaust administrative remedies" are not required to be decided by a jury, but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will

> proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The

Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an

emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

The IDOC Defendants contend that they are entitled to summary judgment as Hoskins did not exhaust his administrative remedies regarding the claims in this lawsuit prior to filing his complaint. Specifically, the IDOC Defendants contend that grievance # 3084-09-19 cannot serve to exhaust administrative remedies because Hoskins filed suit before he received a response at the facility level. Thus, Defendants assert that Hoskins filed suit prematurely. Defendant Myers and Hess contend that grievance # 3084-09-19 does not reference any action or inaction by them, and thus, Hoskins failed to exhaust his administrative remedies against them. Hoskins counters that he submitted many grievances regarding the incidents in the complaint and that he did not get a response because his grievances were destroyed. The Court disagrees with Hoskins and does not credit his testimony. The Court will first address the arguments presented by Myers and Hess.

Initially, the record clearly indicates that Hoskins was aware of the grievance procedures at Pinckneyville. The record reflects that in the past Hoskins successfully and correctly used the grievance procedures in other unrelated matters. Hoskins further testified that he knew of the grievance process. Hoskins likewise understood such steps when he filed his grievances with the prison and when he filed his complaint.

Defendants Myers and Hess maintain that grievance # 3084-09-19 does not reference any action or inaction by them, and thus, Hoskins failed to exhaust his administrative remedies against them. Specifically, Hess argues that while grievance # 3084-09-19 mentions a nurse, it does not mention her in any way. Hess further notes that Hoskins was aware of her name and identity because Hoskins had already filed three grievances naming her. Similarly, Myers argues that grievance # 3084-09-19 does not identify him, and it could not identify him as Hoskins had not yet seen him for the alleged assault on September 4, 2019. Myers argues that Hoskins did not see him for treatment for the alleged injuries until October 3, 2019, which is *after* Hoskins filed grievance # 3840-09-19.

The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013)(noting that district court granted summary judgment on grounds that plaintiff had not exhausted administrative remedies because his grievance did not mention defendants by name or inference); *but see Jackson v. Shepherd*, No. 13-2651,

552 Fed. Appx. 591, 593 n. 1 (7th Cir. Feb. 6, 2014)(noting that granting of summary judgment for failure to name defendants in the grievance was error where the grievance form only asked for a brief summary of the grievance). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)(citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005)(citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

   Here, the Court rejects Hoskins's argument that he did not name Hess because he was not aware of who she was when he filed the grievance. Although this Court in other cases has denied summary judgment on the grounds that a plaintiff did not specifically name a particular defendant, the circumstances of this case are clearly different. The record demonstrates that Hoskins knew Hess by name and her position when he filed the grievance as he had filed several other grievances against Hess prior to the alleged incident. Hoskins also specifically named Hess in his complaint contending that she

retaliated against him for filing prior grievances against her. As such, the Court finds that Hoskins did not exhaust his administrative remedies against Defendant Hess as he should have named her specifically in grievance # 3084-09-19. Further, as to Myers, it is clear that grievance # 3084-09-19 did not name Myers and could not be directed at Myers as Hoskins did not see him for medical treatment until October 3, 2019. Hoskins admitted this during the hearing. Thus, Hoskins did not exhaust his administrative remedies against Defendant Myers through grievance # 3084-09-19.

As to the remaining IDOC Defendants, the Court likewise finds that Hoskins did not exhaust his administrative remedies with grievance # 3084-09-19. Hoskins claims that the administrative process was not available to him because of Pinckneyville's failure to respond, and as such, he has satisfied the exhaustion requirement. Based on the circumstances of this case, however, the Court finds that Hoskins prematurely filed suit.

A finding that the administrative process was not available cannot be made where a prisoner rushed to court to file a lawsuit shortly after an administrative response was required. *See, e.g., Mlaska v. Shah*, Nos. 10-2255, 10-2401, 10-3795, 428 Fed. Appx. 642, 645 (7th Cir. June 29, 2011)(stating that prisoner failed to exhaust where, at best, he filed lawsuit one month after the warden's 60–day response period elapsed); *Jamison v. Franko*, No. 12-C-0242, 2013 WL 5166626, at *3 (N.D. Ill. Sept. 13, 2013)(noting that prisoner failed to exhaust where he filed suit less than two weeks after the 30–day response period had elapsed); *Gregory v. Santos*, No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010)(stating that prisoner failed to exhaust where he gave the ARB "only a few days leeway beyond the six-month period"). In contrast, courts have found that a prisoner has

exhausted his administrative remedies where the prisoner filed suit after sufficient time had passed for a required administrative response. *See, e.g., Kyles v. Mathy,* No. 09–1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010)(noting that prisoner exhausted when he waited approximately one and a half months after the expiration of the two-month response deadline before moving on to the next step of grievance process); *Green v. Hartman,* No. 04-C-4304, 2006 WL 2699336, at *3 (N.D. Ill. Sept. 18, 2006)(finding that prisoner exhausted where he waited to file suit until two months after the expiration of the 30–day response deadline); *Goodman v. Carter,* No. 2000-C-948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)(noting that prisoner exhausted where he waited to file suit until 45–days after the warden's response was due).

      The Court, however, does not opine on the precise period of time that must pass without a response before a prisoner can file suit. That being said, it is clear from the authorities cited above that a prisoner cannot properly exhaust his administrative remedies if he files suit during the pendency of a required administrative response period. As stated previously, Hoskins filed the grievance on September 17, 2019, and he filed this lawsuit on November 26, 2019. The time from the filing of the grievance and the filing of the lawsuit was only seventy days, which is just ten days longer than the sixty day period a grievance officer is given to report his or her findings and recommendations to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e).

      Hoskins also filed his lawsuit before the institution had completed its response to his grievance. The grievance was eventually returned to Hoskins with a response from the Warden on October 1, 2020. Although this amounted to an extended period of time,

Ms. Hale testified at the hearing that Internal Affairs investigations into staff assault allegations tended to take some time, and the delay in completing the investigation was due in part to the Covid-19 pandemic. The complaint in this matter was filed well before the grievance was returned to him and well before Internal Affairs conducted and completed its investigation. Hoskins did not allow the grievance process a chance to proceed through the proper channels or allow the prison an opportunity to address the problem at the institutional level. At the point in time that Hoskins filed his lawsuit, his grievance could not serve to exhaust administrative remedies as to the claims against any of the Defendants in this case. *See, e.g., Ford*, 362 F.3d at 398 (noting that no action shall be brought until exhaustion has been completed). In fact, Hoskins could have continued with the grievance process as to this grievance if he followed the proper procedures and sent it to the ARB. Based on the record, it is clear that Hoskins "jumped the gun" by filing suit before the grievance process was complete. As such, he did not fully exhaust his administrative remedies.

Moreover, as to Hoskins's assertions that his grievances were destroyed, the Court rejects this argument and finds Hoskins not credible.[4] The Court notes that in some

---

[4] The Court notes that Hoskins has a history of not being truthful to the Court. The Seventh Circuit Court of Appeals has specifically held in a prior case of his that a District Judge in the Northern District of Illinois did not err by dismissing his case with prejudice for misrepresentations made in the litigation history portion of a pleading. *See Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011). In that ruling, the Seventh Circuit noted that dismissal was a severe but appropriate sanction for a *pro se* filer because Hoskins had received warning of the consequences of making misrepresentations and yet he persisted. *Id.* at 544. Further, based on similar misrepresentations in this judicial district, former District Judge Reagan dismissed with prejudice three of Hoskins's cases. *See Hoskins v. Spiller, et al.*, 17-1121-MJR-MAB; (Doc. 82; January 25, 2019); *Hoskins v. Dilday, et al.*, 16-0334-NJR-GCS consolidated with *Hoskins v. Dilday, et al.*, 16-0335-MJR-GCS; (Doc. 168; March 12, 2019). Lastly, when presented with a similar argument about destroyed grievances in a case that occurred at Menard Correctional Center with coincidentally similar allegations to the case at bar, former Magistrate Judge Williams found Hoskins's testimony not credible,

circumstances an inmate's ability to exhaust the grievance process may be thwarted. This can occur, for example, if an inmate properly submits a grievance, but does not receive a response. In such circumstances, an inmate's administrative remedies are arguably no longer available to him, and the inmate may thus proceed with a lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809 (noting that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources); *Brown v. Darnold*, No. 09-CV-00240-GPM-DGW, 2010 WL 3702373, at *3 (S.D. Ill. Aug. 17, 2010)(stating that "[t]he Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances.")(quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

Considering the record, however, the undersigned does not find Hoskins's assertions that his grievances were destroyed to be credible. First, Hoskins does not have copies of these grievances that he claims were destroyed. In other cases decided by this Court, handwritten copies of relevant grievances have served to corroborate a plaintiff's assertions. Here, however, Hoskins has no evidence whatsoever to support his assertions, other than his own self-serving testimony that the grievances were destroyed. It seems implausible that the grievances filed by Hoskins were destroyed or that he was prevented

---

contradictory and the claims in his complaint to be outlandish and fantastical. *See Hoskins v. Spiller, et al.*, 16-1232-MJR-SCW; (Doc. 91, ps. 23-27; July 16, 2018). The Court takes judicial notice of these decisions. *See, e.g., Parungao v. Community Health Systems, Inc.*, 858 F.3d 452, 457 (7th Cir. 2017)(noting that a court may "take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned.").

from filing the grievances when so many of his other grievances were received and answered. The record is replete with instances where Hoskins was able to use the grievance process as to other issues not relevant to this case. Thus, the Court does not find Hoskins credible regarding the alleged destruction of his grievances and his inability to file grievances, as the record clearly suggests otherwise.

## CONCLUSION

Based on the foregoing, Defendants' summary judgment motions as to exhaustion of administrative remedies are **GRANTED**. The Court **DISMISSES** without prejudice Hoskins's claims against the Defendants. The Court **DIRECTS** the Clerk of the Court to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: December 10, 2020.

Digitally signed
by Judge Sison 2
Date: 2020.12.10
09:04:33 -06'00'

GILBERT C. SISON
United States Magistrate Judge